UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUIS R.,[1] <br><br> Plaintiff, <br><br> v. <br><br> FRANK BISIGNANO,[2] Commissioner of Social Security Administration, <br><br> Defendant. | Case No. 2:24-CV-06957-AJR <br><br> **MEMORANDUM DECISION AND ORDER** |

## I.

## INTRODUCTION

Plaintiff Luis R. ("Plaintiff") brings this action seeking to overturn the decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his application for Disability Insurance Benefits ("DIB") and

---

[1] Plaintiff's name is partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] Frank Bisignano became the Commissioner of Social Security on May 22, 2025. Frank Bisignano is substituted as the Defendant in this action pursuant to Federal Rule of Civil Procedure 25(d).

Supplemental Security Income ("SSI").  The parties consented, pursuant to 28 U.S.C. § 636(c), to proceed for all purposes before a U.S. Magistrate Judge.  (Dkts. 6, 7.)  For the reasons stated below, the decision of the Commissioner is AFFIRMED.

## II.
## PROCEDURAL HISTORY

Plaintiff filed an application for DIB on July 20, 2018 and SSI on September 11, 2018, alleging disability commencing October 1, 2017.  (Dkt. 10-6 at 2-5, 10-15.)  The Commissioner denied the claims by initial determination on March 6, 2019, (Dkt. 10-4 at 2, 26), and upon reconsideration on September 6, 2019.  (Dkt. 10-4 at 30, 60.)  Plaintiff requested a *de novo* hearing on October 14, 2019.  (Dkt. 10-5 at 25-26.)  On August 25, 2020, Administrative Law Judge Michael Mannes conducted a hearing by telephone[3] and subsequently issued an unfavorable decision on December 4, 2020.  (Dkt. 10-3 at 15-28, 175-208.)  Plaintiff requested review of ALJ Mannes' decision by the Appeals Council on December 7, 2020.  (Dkt. 10-5 at 78.)  The Appeals Council denied Plaintiff's request for review on January 22, 2021.  (Dkt. 10-3 at 2-4.)

On March 22, 2021, Plaintiff filed a complaint with this Court in Luis R. v. Andrew Saul, Case No. 2:21-cv-02497-GJS.  (Dkt. 10-10 at 11-15.)  On October 6, 2021, U.S. Magistrate Judge Gail J. Standish granted the parties' joint motion for remand and reversed the decision of the Commissioner and remanded the case for further proceedings.  (Dkt. 10-10 at 2-5.)  On May 6, 2022, the Appeals Council remanded Plaintiff's case to an ALJ.  (Dkt. 10-10 at 6-9.)

The Commissioner appointed ALJ Lisa B. Martin (the "ALJ") to preside over the remand.  (Dkt. 10-9 at 90; Dkt. 10-11 at 32-57.)  Two hearings were

---

[3] Plaintiff was represented by an attorney at the hearing and agreed to conduct the proceeding via teleconference.  (Dkt. 10-3 at 177; Dkt. 10-5 at 72.)

subsequently held on June 13, 2023 and April 18, 2024.  (Dkt. 10-9 at 28-90.)  On May 13, 2024, the ALJ denied Plaintiff's applications for DIB and SSI.  (Dkt. 10-9 at 2-18.)  As Plaintiff did not file written exceptions and the Appeals Council did not assume jurisdiction, the ALJ's decision became the final decision of the Commissioner on the 61st day, July 13, 2024.[4]  See 42 U.S.C. § 405(g); 20 C.F.R. §§ 404.984(d), 416.1484(d).  Plaintiff now seeks review of the ALJ's final decision.

## III.

## THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits under the Social Security Act ("SSA"), a claimant must show a medically determinable physical or mental impairment that prevents the claimant from engaging in substantial gainful activity and that is expected to result in death or to last for a continuous period of at least twelve months.  See Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)).  To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry.  See 20 C.F.R. §§ 404.1520, 416.920.  The steps are:

(1) Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.

(2) Is the claimant's impairment severe?  If not, the claimant is found not disabled.  If so, proceed to step three.

(3) Does the claimant's impairment meet or equal one of the specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is found disabled.  If not, proceed to step four.

---

[4] Ordinarily, an ALJ's decision becomes the Commissioner's "final decision" only if the Appeals Council denies review or issues its own decision.  See 20 C.F.R. §§ 404.955, 404.981.  However, where, as here, the case is remanded by a federal court, different rules apply.  Under 20 C.F.R. §§ 404.984 and 416.1484, if the claimant does not file written exceptions to the ALJ's decision within 60 days, and the Appeals Council does not assume jurisdiction, the ALJ's decision automatically becomes the Commissioner's final decision.

|   |   |   |
|---|---|---|
| (4) | Is the claimant capable of performing his past work?  If so, the claimant is found not disabled.  If not, proceed to step five. |
| (5) | Is the claimant able to do any other work?  If not, the claimant is found disabled.  If so, the claimant is found not disabled. |

See Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006); 20 C.F.R. §§ 404.1520(b)-(g)(1), 416.920(b)-(g)(1).  The claimant has the burden of proof at steps one through four and the Commissioner has the burden of proof at step five.  See Ford v. Saul, 950 F.3d 1141, 1148-49 (9th Cir. 2020).

Before making the step four determination, the ALJ must pause to access the claimant's RFC.  20 C.F.R. §§ 416.920(e), 404.1520(e).  The RFC, defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite the limitations, is relevant to both the fourth and fifth steps of the analysis.  See 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); Laborin v. Berryhill, 867 F.3d 1151, 1153 (9th Cir. 2017).  A claimant's RFC is "the most [the claimant] can still do despite [their] limitations."  Id.  The ALJ alone determines a claimant's RFC after consideration of all the relevant evidence in the case record.  Id.; see also 20 C.F.R. §§ 404.1546(c); 416.946(c); Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001) ("[I]t is the responsibility of the ALJ, not the claimant's physician to determine residual functional capacity.").

If, at step four, the claimant meets their burden of establishing an inability to perform past work, then at step five, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's RFC, age, education, and work experience.  See Ford, 950 F.3d at 1149; 20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1).  The Commissioner may do so by the testimony of a vocational expert ("VE") or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids").  See Ford, 950 F.3d at 1149.  When a claimant has both exertional (strength-related) and

4

non-exertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a VE.  See Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000).

Throughout the five-step evaluation, the ALJ "is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Ahearn v. Saul, 988 F.3d 1111, 1115 (9th Cir. 2021) (internal quotation marks omitted).

## IV.
## THE ALJ'S DECISION

On remand, the ALJ initially determined that Plaintiff met the special earnings requirements for a period of disability and disability insurance benefits through December 31, 2018.  (Dkt. 10-9 at 8.)  The ALJ then employed the five-step sequential evaluation process and concluded that Plaintiff was not disabled after December 31, 2018, within the meaning of the Social Security Act.  (Dkt. 10-9 at 8-18.)  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 1, 2017, the alleged onset date.  (Id. at 8.)  At step two, the ALJ found that Plaintiff had the following severe impairments: lumbar disc disease, cervical disc disease, degenerative joint disease of the right knee, degenerative joint disease of the right shoulder, right wrist disorder, and obesity.  (Id.)  At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any of the listings in the regulations.  (Id. at 9.)

At step four, the ALJ assessed Plaintiff's RFC and concluded that Plaintiff could perform light work, with the following limitations:

> limited to 4 hours of standing/walking, the rest sitting without limitation, in an 8-hour workday.  The claimant is precluded from all ladders, ropes, and scaffolds climbing, and all dangerous work hazards exposure, and the claimant is limited to performing the remaining postural motions occasionally.  The claimant is precluded from all uneven/unpaved surface walking tasks.  The claimant is limited to

occasional overhead reaching tasks with the right upper extremity, and is limited to frequent, but not constant, forward reaching and handling tasks with the right upper extremity. The claimant is limited to performing up to detailed, but not complex, work tasks, work not requiring a production quota pace (e.g., assembly line environment w[h]ere one's work impacts work down the line), and work allowing the claimant will be off task up to 3% of workday due to momentary symptom distractions.

(Id. at 10.) The ALJ found that Plaintiff had past relevant work as a janitor and spinning frame operator. (Id. at 16.) The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Id. at 11.)

At step five, the ALJ determined that "[c]onsidering the [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." (Id. at 17.) Specifically, the ALJ found that Plaintiff could perform the representative occupations of order caller (Dictionary of Occupational Titles ("DOT") # 209.667-014) (approximately 12,000 jobs nationally), router (DOT 222.587-038) (approximately 22,350 jobs nationally), and escort vehicle driver (DOT 919.663-022) (approximately 40,350 jobs nationally). (Id.) Accordingly, the ALJ found that Plaintiff had not been under a disability as defined by the Social Security Act from October 1, 2017, the alleged onset date, through the date of the ALJ's decision. (Id. at 18, ¶ 11.)

## V.
## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial

6

evidence in the record as a whole.  See Ahearn 988 F.3d at 1115-16.  Substantial evidence is "more than a mere scintilla," but less than a preponderance:  it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Biestek v. Berryhill, 587 U.S. 97, 103 (2019) (internal quotation marks omitted); see also Ferguson v. O'Malley, 95 F.4th 1194, 1199 (9th Cir. 2024).

"Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."  Woods v. Kijakazi, 32 F.4th 785, 788 (9th Cir. 2022) (internal quotation marks omitted); see also Ferguson, 95 F.4th at 1199.  Although the court cannot substitute its judgment for the Commissioner's, it must nonetheless "assess the entire record, weighing the evidence both supporting and detracting from the [Commissioner's] conclusion."  Ahearn, 988 F.3d at 1115.  In so doing, the court is limited to reviewing the reasoning provided by the ALJ and "may not affirm the ALJ on a ground upon which he did not rely."  SSA § 205, 42 U.S.C. § 405(g); Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) ("[W]e cannot rely on independent findings of the district court.  We are constrained to review the reasons the ALJ asserts.").

## VI.

## DISCUSSION

Plaintiff raises two grounds for relief:  (1) whether the ALJ's RFC determination that Plaintiff would be off-task up to three percent of the workday is supported by substantial evidence; and (2) whether the ALJ properly evaluated Plaintiff's subjective symptom testimony regarding his sleep disturbances.[5]  For the

---

[5] Plaintiff challenges only the ALJ's findings concerning the off-task allowance and sleep disturbances.  (Dkt. 11 at 5, 10.)  Issues not argued with specificity are deemed waived and will not be addressed.  See Carmickle v. Comm'r of Soc. Sec. Admin., 533 F.3d 1155, 1161 n.2 (9th Cir. 2008).

reasons set forth below, the Court AFFIRMS the decision of the Commissioner.

## A. **Substantial Evidence Supports The ALJ's Three Percent Off-Task RFC Limitation.**

As set forth above, the ALJ determined that Plaintiff has the RFC to perform light work[6] with additional restrictions, including a three percent off-task allowance to account for "momentary symptom distractions." (Dkt. 10-9 at 10.) Plaintiff argues that this finding is unsupported because the ALJ relied on her own lay judgment rather than medical evidence. (Dkt. 11 at 7.) Specifically, Plaintiff emphasizes his testimony describing severe pain in multiple joints, the need to change positions, chronic sleep disturbance requiring daily naps, and functional limitations requiring a cane and in-home caregiver services. (Dkt. 11 at 8 (citing Dkt. 10-3 at 191-94; Dkt. 10-9 at 38-46, 71-75).) Plaintiff asserts that these symptoms reasonably show off-task behavior far greater than three percent of the workday. (Dkt. 11 at 8.)

### 1. **Legal Standard.**

In social security appeals, the ALJ alone determines a claimant's RFC after consideration of "all the relevant evidence in [the] case record." 20 C.F.R. § 404.1545(a)(1); 20 C.F.R. § 404.1546(c); Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001) ("It is the responsibility of the ALJ, not the claimant's physician to determine residual functional capacity."); McLeod v. Astrue, 640 F.3d 881, 884-85 (9th Cir. 2011).

In formulating an RFC, the ALJ must consider all relevant evidence, including medical opinions, non-medical source opinions, and the claimant's subjective symptom testimony. See Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d

---

[6] Light work is defined in part as lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. 20 C.F.R. § 404.1567(b). A job is categorized as light work "when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arms or leg controls." Id.

8

1219, 1226 (9th Cir. 2009).  The ALJ need not adopt any one medical opinion in its entirety, but rather must assess the claimant's work-related functional capacity and restrictions based on the record as a whole.  See Ly v. Colvin, 2014 WL 4795044, at *11 (E.D. Cal. Sept. 25, 2014) (citing Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174-76 (9th Cir. 2008)).

An ALJ may not make proprietary medical determinations regarding the claimant's condition not reflected in the medical evidence.  See, e.g., Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975) (ALJ is forbidden from making his or her own medical assessment beyond that demonstrated by the record); Rohan v. Chater, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings."); Javier A. G. v. Saul, 2020 WL 6940042, at *9 (C.D. Cal. Nov. 25, 2020) ("[A]n ALJ may not substitute his or her lay interpretation of raw medical data in making an RFC assessment in lieu of a qualified expert's medical opinion.").

**2.   Analysis.**

There was substantial evidence to support the ALJ's RFC finding that Plaintiff would be off task for up to three percent of the workday.  The ALJ's conclusion was grounded in medical opinions, objective findings, and Plaintiff's reported activities of daily living, all of which reasonably supported the functional limitations assessed.

***a.   Mental Impairments.***

The ALJ found that Plaintiff's mental impairments, including depressive disorder, anxiety disorder, post-traumatic stress disorder, and personality disorder, were non-severe, with only mild limitations in the paragraph B domains.  (Dkt. 10-9 at 8-9 (citing Dkt. 10-8 at 60-112; Dkt. 10-19 at 165-346).)  The ALJ explained that multiple mental-status examinations showed Plaintiff was clean, alert, "oriented x3," with intact memory and normal affect.  (Id. (citing Dkt. 10-8 at 7, 26-27, 30, 32, 38, 41).)  The ALJ further noted that treatment was limited and conservative, and

Plaintiff stopped counseling during the pandemic. (Id. (citing Dkt. 10-19 at 165-346).) Plaintiff also managed daily activities such as preparing meals, performing chores, paying bills, shopping, and using public transportation. (Dkt. 10-9 at 9.) On this record, the ALJ reasonably concluded that Plaintiff's mental impairments caused no more than minimal functional limitations and would not result in sustained off-task behavior greater than momentary distraction.

### b.  *Longitudinal Musculoskeletal Evidence.*

The ALJ's longitudinal review of musculoskeletal evidence supports the limited off-task allowance. Specifically, imaging of the cervical and lumbar spine showed degenerative changes, but generally mild to moderate findings, with intact motor function and strength. (Dkt. 10-9 at 11-13 (citing Dkt. 10-8 at 38; Dkt. 10-14 at 359; Dkt. 10-19 at 117-164).) The ALJ further noted that physical examinations documented intact strength, independent ambulation, and normal coordination. (Dkt. 10-9 at 13-14 (citing Dkt. 10-8 at 37; Dkt. 10-14 at 2-111; Dkt. 10-17 at 82-93).) Plaintiff's right-knee surgeries in July 2022 and January 2023 were followed by intact neurovascular findings, good healing, and progress with physical therapy. (Dkt. 10-9 at 13 (citing Dkt. 10-14 at 367; Dkt. 10-18 at 110-15).) Plaintiff's right-wrist tendinosis was treated conservatively with injections and splinting. (Dkt. 10-9 at 12 (citing Dkt. 10-17 at 2-81).) Monthly follow-ups reflected minimal interval changes and adequate symptom control with medication. (Dkt. 10-9 at 12 (citing Dkt. 10-14 at 2-111; 143-289).) This evidence supports an RFC that accommodates pain and postural limitations, but not more than the three percent off-task allowance for momentary symptom-related distraction.

### c.  *Daily Activities And Post-Onset Work History.*

The ALJ reasonably relied on Plaintiff's reported activities and post-onset work in assessing the RFC. Plaintiff testified that he worked as a handyman and warehouse worker in 2021 and 2022, though at levels below substantial gainful activity. (Dkt. 10-9 at 8). Plaintiff also testified that he lived with others, prepared

his own meals, performed chores, shopped for groceries, handled money, and traveled independently by bus or with friends. (Dkt. 10-9 at 9-10 (citing Dkt. 10-7 at 26-32; Dkt. 10-19 at 172).) Plaintiff reported fishing "almost every weekend." (Dkt. 10-9 at 15 (citing Dkt. 10-8 at 80).) These activities support the ALJ's finding that Plaintiff could sustain basic work functions with, at most, brief and occasional distraction from symptoms.

### d.   *Medical Evidence.*

The medical opinion evidence likewise supports the ALJ's three percent off-task allowance. Specifically, consultative examiner Dr. Sohail Afra opined in 2017 that Plaintiff could perform medium work with no restrictions on sitting, walking, or standing. (Dkt. 10-9 at 13 (citing Dkt. 10-8 at 10).) Consultative examiner Dr. Augustine Iluore in 2018 also opined that Plaintiff could perform medium work, with four hours of standing and walking and no restrictions on sitting. (Dkt. 10-9 at 14 (citing Dkt. 10-8 at 28).) State-agency physicians Drs. E. Christian and S. Garcia in 2019 assessed that Plaintiff was capable of light work with six hours standing and walking. (Dkt. 10-9 at 14 (citing Dkt. 10-4 at 2-14, 40-41, 57-58).) State-agency psychologist Dr. S. Koutrakos also in 2019 found Plaintiff's mental impairments were non-severe. (Dkt. 10-9 at 15 (citing Dkt. 10-4 at 38-39, 53-54).) The ALJ found these opinions generally persuasive and, in an abundance of caution, imposed more restrictive RFC limitations, including four hours standing and walking, cane use, postural and manipulative restrictions, exclusion of production-pace work, and the three percent off-task allowance. (Dkt. 10-9 at 14-16.)

In addition, the ALJ reasonably rejected more extreme limitations. Specifically, the ALJ discounted the 2022 opinion of physical therapist E. Dalisay, which called for frequent breaks and less than two hours of standing and walking, because it was unsupported by objective findings, tied to immediate post-surgical recovery, and inconsistent with examinations, imaging, other medical opinions, and Plaintiff's daily activities. (Dkt. 10-9 at 15-16 (citing Dkt. 10-16 at 211-14).) The

ALJ was permitted to reject parts of the opinions while relying on other portions that the ALJ concluded were consistent with the record as a whole. See Russell v. Bowen, 856 F.2d 81, 83 (9th Cir. 1988) ("It is not necessary to agree with everything an expert witness says in order to hold that his testimony contains 'substantial evidence.'"). Thus, the Court concludes that the ALJ's RFC assessment does not constitute an impermissible lay opinion, but rather is supported by the medical opinions of the various physicians of record. See Fesagaiga v. Saul, 2022 WL 901551, at *10–11 (S.D. Cal. Mar. 28, 2022) (holding that substantial evidence supported the RFC assessment of light work where medical opinions found the plaintiff capable of medium work and the ALJ gave partial weight to the opinions).

Although no physician expressly quantified an off-task percentage, that absence does not establish error. Contrary to Plaintiff's arguments, the RFC determination is an administrative finding, not a medical opinion, and the ALJ is tasked with synthesizing the record into work-related limitations. See Stubbs-Danielson, 539 F.3d at 1174. Consistent with this principle, the Ninth Circuit has explained that an ALJ is not required to map each RFC limitation directly to a specific medical opinion so long as the RFC is supported by substantial evidence and the ALJ explains how the record was evaluated. See Woods, 32 F.4th at 790; Rounds v. Comm'r Soc. Sec. Admin., 807 F.3d 996, 1006 (9th Cir. 2015) (noting that the "ALJ may rationally rely on specific imperatives regarding a claimant's limitations, rather than recommendations" and "is responsible for translating and incorporating clinical findings into a succinct RFC." (internal citation omitted)).

Plaintiff's assertion that "any reasonable person" would find greater distraction is also unpersuasive. (Dkt. 11 at 8.) The Court may not substitute its judgment for that of the ALJ where substantial evidence supports the findings. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). Moreover, the burden remained with Plaintiff to show greater limitation than the ALJ found. See 20 C.F.R. §§ 404.1512(a)(1), 416.912(a)(1). Yet, Plaintiff identifies no medical

12

evidence suggesting that he would be off task more than three percent of the workday, relying instead solely on his own testimony. (Dkt. 11 at 8-9 (citing Dkt. 10-3 at 110; Dkt. 10-9 at 39-40, 41, 45, 48, 51, 71-75).) As discussed further below, the ALJ reasonably discounted those allegations. (Dkt. 10-9 at 11-13.) Absent supporting medical evidence, Plaintiff fails to show that greater off-task limitations were warranted. See Burch, 400 F.3d at 684 (upholding the RFC assessment where the claimant "has not set forth, and there is no evidence in the record, of any functional limitations as a result of her [impairment] that the ALJ failed to consider"); see also George A. v. Berryhill, 2019 WL 1875523, at *5 (C.D. Cal. Apr. 24, 2019) ("Given the absence of evidence that [p]laintiff's mild mental impairments limited [p]laintiff's ability to perform any work-related activities, the ALJ was not required to include additional mental limitations in his RFC assessment or hypothetical to the VE."). Accordingly, this issue does not merit remand.

**B.     The ALJ Properly Evaluated Plaintiff's Subjective Symptom Testimony.**

In his second ground for relief, Plaintiff contends that the ALJ improperly rejected his subjective symptom testimony regarding his sleep disturbances without offering specific, clear and convincing reasons. (Dkt. 11 at 10.) Plaintiff argues that the ALJ merely summarized the medical evidence without explaining how that evidence undermined his testimony. (Id. at 12.) In response, Defendant contends that the ALJ did provide specific, clear and convincing reasons for discounting Plaintiff's testimony about his sleep disturbances, citing inconsistencies with the objective medical record and with Plaintiff's own statements. (Dkt. 15 at 6-11.)

**1.     Plaintiff's Subjective Symptom Testimony.**

At the 2020 administrative hearing, Plaintiff testified that he experienced constant pain in his hands, knees, and shoulders, which interfered with his daily activities and ability to rest. (Dkt. 10-3 at 190-94.) At the 2023 hearing, Plaintiff elaborated that a pinched cervical nerve caused pain radiating through his back, requiring him to alternate between sitting, standing, and lying down, and that he

1  could sleep no more than two to three hours per night. (Dkt. 10-9 at 45.) Plaintiff
2  further testified that daytime naps were necessary. (Id.) At the 2024 hearing,
3  Plaintiff confirmed continued pain in multiple joints. (Id. at 70-75.) Plaintiff also
4  clarified that he now relied on a cane for ambulation and had been approved for in-
5  home supportive services, with a caregiver providing approximately 96 hours per
6  month to assist with daily needs. (Id. at 71-72, 75.)

### 2. Legal Standard.

When assessing a claimant's credibility regarding subjective pain or intensity of symptoms, the ALJ must engage in a two-step analysis. See Trevizo v. Berryhill, 871 F.3d 664, 678 (9th Cir. 2017). First, the ALJ must determine if there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Id. "In this analysis, the claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Nor must a claimant produce objective medical evidence of the pain or fatigue itself, or the severity thereof." Id. (emphasis in original).

Second, if the claimant satisfies the first step, and there is no evidence of malingering, the ALJ can reject the claimant's testimony as to the severity of the symptoms "only by offering specific, clear and convincing reasons for doing so." Id.; see also Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014). The ALJ may consider the following factors in discrediting the claimant's subjective symptom testimony:

> (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.

Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal quotation marks

omitted); see also SSR 16-3p, 2016 WL 1119029, at *4.  Further, an ALJ "is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to the Social Security Act."  Smartt v. Kijakazi, 53 F.4th 489, 499 (9th Cir. 2022) (internal quotation marks omitted).  At the same time, when an ALJ rejects a claimant's testimony, he must "specify which testimony [he] finds not credible, and then provide clear and convincing reasons, supported by evidence in the record," to support that determination.  Brown-Hunter v. Colvin, 806 F.3d 487, 489 (9th Cir. 2015).  General or implicit findings of credibility will not suffice; the ALJ must show his work.  Smartt, 53 F.4th at 499.

### 3. Analysis.

The ALJ engaged in the two-step analysis required by Trevizo and found at the first step that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (Dkt. 10-9 at 11.)  At step two, however, the ALJ discounted Plaintiff's testimony about the severity of his sleep disturbances with clear and convincing reasons supported by substantial evidence. (Id. at 8-16.)

#### a. *Daily Activities.*

The ALJ reasonably found that Plaintiff's daily activities undermined his testimony that pain and poor sleep prevented him from basic work on a sustained level.  Plaintiff reported preparing simple meals, doing light household chores, shopping in stores, paying bills, and using public transportation.  (Dkt. 10-9 at 9; Dkt. 10-7 at 26-28, 401.)  He also traveled independently to visit his children in Mexico and stated that he went fishing nearly every weekend.  (Id. at 15 (citing Dkt. 10-8 at 80).)  He further reported no difficulties with personal care.  (Dkt. 10-7 at 26-27.)  These activities reasonably suggest that Plaintiff could sustain at least simple, routine functions inconsistent with his claim that sleep disturbance and pain left him unable to function during the day.  See Burch, 400 F.3d at 681 ("The ALJ

15

was permitted to consider daily living activities in his credibility analysis."); Burrell v. Colvin, 775 F.3d 1133, 1137 (9th Cir. 2014) (inconsistencies between testimony and reported activities provide valid reason for adverse credibility finding).

### b. *Symptom Fluctuation With Treatment.*

The ALJ also cited Plaintiff's own admissions that his pain, and by extension, his sleep quality, improved with treatment. (Dkt. 10-9 at 13.) At the 2023 hearing, Plaintiff testified that medication allowed him to "do more" and that he was "completely comfortable" when lying down. (Id. at 46.) Treatment notes from 2023 to 2024 similarly reflected that Plaintiff was "doing well" with medication, reporting improved mobility, better tolerance of daily activities, and adequate symptom control. (Dkt. 10-19 at 118, 144, 154.) For example, at December 14, 2023 and February 20, 2024 visits to Southwest Pain Management, Plaintiff reported that he was "doing well with current medication regimen and desire[d] refills." (Id. at 118, 144.) Both visits also noted that Plaintiff's was "able to perform [his activities of daily living] independently." (Id.) Such improvement reasonably undermines Plaintiff's claim that sleep was consistently and severely disrupted such that he was incapable of basic work. See Wellington v. Berryhill, 878 F.3d 867, 876 (9th Cir. 2017) ("Evidence of medical treatment successfully relieving symptoms can undermine a claim of disability."); Kitchen v. Kijakazi, 82 F.4th 732, 739 (9th Cir. 2023) (finding that the ALJ provided specific, clear and convincing reasons to discount the plaintiff's subjective symptom testimony by relying on medical records showing that the plaintiff experienced a gradual improvement in his functioning with medication and psychotherapy sessions).

### c. *Medical Opinions and Objective Evidence.*

The ALJ further explained that Plaintiff's claims of disabling sleep disturbance were inconsistent with the objective medical records. (Dkt. 10-9 at 11.) Imaging showed only mild cervical disc space narrowing without nerve root compromise and moderate lumbar changes without significant stenosis. (Id. at 11,

13 (citing Dkt. 10-8 at 16, 38; Dkt. 10-19 at 133-36).) The ALJ also noted that examinations routinely documented 5/5 motor strength, intact sensation, normal reflexes, and independent ambulation. (Id. at 12-13 (citing Dkt. 10-8 at 8, 27, 37, 54, 56; Dkt. 10-14 at 359-60).) Further, the ALJ noted that consultative examiners likewise recorded normal coordination and gait despite subjective complaints. (Dkt. 10-8 at 8-9, 27, 37.) These largely normal findings, together with medical opinions assessing Plaintiff as capable of at least light work, supported the ALJ's conclusion that Plaintiff's sleep disturbances were overstated. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (objective medical evidence is a relevant factor in evaluating the severity of pain); 20 C.F.R. § 404.1529(c)(2).

Plaintiff does not appear to actually challenge any of the reasons provided by the ALJ to discount Plaintiff's testimony, but instead contends that the ALJ committed legal error because "the ALJ never identified that [Plaintiff] alleges any sleep disturbances." (Dkt. 11 at 12.) However, the ALJ actually did recognize that Plaintiff "reported having problems sleeping for more than two hours at a time and with putting on his shoes/tying laces." (Dkt. 10-9 at 12 (citing Dkt. 10-8 at 41-42).) Indeed, at the June 2023 administrative hearing, the ALJ asked multiple questions regarding Plaintiff's sleep disturbances and Plaintiff testified that his sleep disturbances were caused by pain from a pinched nerve in his neck. (Id. at 45-46.) As set forth above, the ALJ reasonably discounted Plaintiff's neck and back pain allegations and therefore adequately discounted any derivative symptoms associated with those impairments, including sleep disturbances. See Thompson v. Colvin, 2014 WL 197793, at *7 (E.D. Cal. Jan. 16, 2014) (explaining that "once the ALJ found plaintiff to be not entirely credible [based on her pelvic impairment with pelvic pain], the allegations of pain-induced sleep, fatigue, and concentration problems also lost credibility" and therefore the ALJ "was not required to engage in a separate extended analysis of the sleep and fatigue problems"); Marshall v. Astrue, 2012 WL 4069459, at *9 (C.D. Cal. Sept. 17, 2012) ("As he provided clear and

convincing reasons to discount plaintiff's subjective complaints about the underlying physical impairments, the ALJ was not required to engage in a separate extended analysis of the sleep and fatigue problems, which allegedly arose from the physical impairments.").

Regardless, even if the ALJ should have more specifically addressed Plaintiff's alleged sleep disturbances, any error was harmless because the ALJ's ultimate decision finding Plaintiff less than fully credible remains valid in light of the numerous clear and convincing reasons set forth above to discount Plaintiff's neck and back pain allegations. See Carmickle, 533 F.3d at 1162 ("So long as there remains substantial evidence supporting the ALJ's conclusions on credibility and the error does not negate the validity of the ALJ's ultimate credibility conclusion, such is deemed harmless and does not warrant reversal." (internal quotation marks, brackets, and ellipses omitted)); see also Molina v. Astrue, 674 F.3d 1104, 1122 (9th Cir. 2012) ("[A]n ALJ's failure to comment upon lay witness testimony is harmless where the same evidence that the ALJ referred to in discrediting the claimant's claims also discredits the lay witness's claims." (internal quotation marks and brackets omitted)), superseded by statute on other grounds by 20 C.F.R. § 404.1502(a); Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009) ("In light of our conclusion that the ALJ provided clear and convincing reasons for rejecting Valentine's own subjective complaints, and because Ms. Valentine's testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting her testimony.").

In sum, the Court concludes that the ALJ properly discounted Plaintiff's testimony concerning his alleged sleep disturbance based on inconsistent daily activities, improvement with treatment, and objective medical evidence, including consultative opinions and imaging. See Reither v. Comm'r of Soc. Sec. Admin., 2024 WL 3673673, at *11 (E.D. Cal. Aug. 5, 2024) (finding objective medical evidence coupled with the plaintiff's inconsistent statements to medical providers

was sufficient to discredit the plaintiff's subjective symptom testimony). As such, the Court finds that substantial evidence supports the ALJ's evaluation of Plaintiff's subjective symptom testimony. See Rollins, 261 F.3d at 857 ("The ALJ gave clear and convincing reasons for discounting portions of [plaintiff's] excess pain testimony, and those reasons were supported by substantial evidence."). Accordingly, remand is not warranted on this second ground for relief.

## VII.
## CONCLUSION

Consistent with the foregoing, IT IS ORDERED that Judgment be entered AFFIRMING the decision of the Commissioner. The Clerk of the Court shall serve copies of this Order and the Judgment on counsel for both parties.

DATED: September 24, 2025

_____
HON. A. JOEL RICHLIN
UNITED STATES MAGISTRATE JUDGE